### 70994. CROWE v. J. C. PENNEY, INC.

(340 SE2d 192)

DEEN, Presiding Judge.

The appellant, Mary Louise Crowe, commenced this action against the appellee, J. C. Penney, Inc., alleging intentional infliction of emotional distress and false imprisonment, and asserting a claim for sick pay benefits. The trial court granted summary judgment for the appellee, and Crowe appeals.

Crowe testified by deposition that she had been employed by the appellee since 1972, the last six years in the tailor shop. On March 7, 1983, she was summoned to the security office, where from 8:12 a.m. until 11:20 a.m. she was questioned by John Rozar and Lynn Garland, security personnel of the appellee, about reports of theft of certain store goods. The interrogation was not continuous for the three-hour period: Rozar and Garland alternated in questioning the appellant, and there were 3-to-5 minute intervals between the sessions; the appellant took at least 30 minutes to write a statement; at 11:00 a.m., a break was taken for the appellant to go to the rest room (accompanied by a female security officer). Crowe claimed that Garland called her a liar and was particularly offensive, slamming down his hands on the desk and yelling; Rozar had also called her a liar, but she acknowledged that he had otherwise been courteous. She asserted that

when she had asked if she could go fetch her purse, Garland told her that she could not leave the room until they found out what they wanted to know. Crowe, however, admitted that she had not complained to Rozar and Garland that they were upsetting her; that she had not asked to stop the interview; and that she actually had preferred to continue the interview to clear up the matter.

Following the interview, the appellant was sent home, but a few days later she was instructed to report back to work. Upon her return, the company management was pleasant with her, but she was constantly watched by security personnel; she claimed also that her co-workers would no longer speak with her and that her automobile and coat were vandalized by other employees. She worked for approximately two weeks after the confrontation and then requested a leave of absence with sick pay because the incident had made her anxious. The appellee denied the request for sick pay but granted a leave of absence for one month. The appellee paid the appellant for vacation time during part of her absence, and it also granted her subsequent request for an additional month's leave of absence through May 27, 1983; her employment was terminated when she failed to report for work on May 31, 1983.

The evidence presented by the appellee showed that in early February 1983, an anonymous phone caller had reported that the appellant was stealing store goods by concealing them beneath her clothing. This anonymous call was not seriously investigated. In early March 1983, however, two of the appellant's co-workers approached the security office and reported suspicious conduct by the appellant. All of the allegations involved the appellant's suspected removal of store goods by concealing them beneath her clothing, but no one had actually observed the appellant stealing any goods. The appellant had consented to be interviewed on March 7, 1983, regarding these accusations.

Following this interview, the personnel manager stated that the appellant was given a written reprimand for mishandling store property, but was not discharged because the evidence of theft was not conclusive. The appellant's request for sick pay had been denied on the basis that the cause of her absence, i.e., her alleged anxiety, resulted from her own misconduct. Because the appellant had not reported for work on May 31, 1983, and because she failed to contact anyone with the appellee to inform them of any continued inability to return to work (although the appellant claimed that she did contact the appellee), the appellant's employment was terminated for job abandonment, pursuant to the company policy that required such when an employee missed three consecutive work days without notifying the company. Garland and Rozar acknowledged that they had confronted the appellant with the accusations made by her co-work-

ers, but both denied calling her a liar or yelling at her. Both claimed that the appellant had remained calm during the interview and never expressed a desire to discontinue it. *Held*:

1. The appellant contends that the manner of her interrogation and the subsequent acts of the appellee constituted an intentional infliction of emotional distress. Georgia recognizes that tort, but recovery for intentional infliction of emotional distress has been authorized only where the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff. *Georgia Power Co. v. Johnson*, 155 Ga. App. 862 (274 SE2d 17) (1980); *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga. App. 202 (293 SE2d 383) (1982). In the instant case, while the interrogation of the appellant, even accepting the appellant's version of it, could not be described as a shmooz,[1] we conclude that it did not exceed the bounds usually tolerated by society.

The appellee's actions following the interview contraindicated an intent to inflict emotional distress. The appellant herself characterized the supervisory personnel as sympathetic and encouraging. The appellee allowed the appellant a two-month leave of absence and did not discharge her until she failed to report back for work upon the expiration of the leave of absence. The only reasonable conclusion was that the appellee's actions were designed to minimize the appellant's distress.

2. The trial court also properly concluded that as a matter of law the pleadings and the evidence failed to establish a claim for false imprisonment. The unsolicited statements made by two of the appellant's co-workers, reporting that the appellant was periodically purloining store goods, certainly furnished probable cause for the appellee to question the appellant. Under OCGA § 51-7-60, the appellee had a privilege to investigate and reasonably detain the appellant for that purpose. Prior to the interview, the appellant executed a form, consenting to be questioned regarding matters of company business, and at no time did she request that the questioning be discontinued; on the contrary, in her deposition, the appellant indicated that she had not wanted to terminate the interview until the matter was cleared up. Perhaps such questions of whether a defendant acted with reasonable prudence or whether the manner and length of the detention were reasonable are usually matters for the jury, e.g., *United States Shoe Corp. v. Jones*, 149 Ga. App. 595 (255 SE2d 73) (1979); *Gibson's Prods. v. Edwards*, 146 Ga. App. 678 (247 SE2d 183) (1978); but under the circumstances of the instant case, summary judgment

---

[1] See *MCG Dev. Corp. v. Bick Realty Co.*, 140 Ga. App. 41, 42 (230 SE2d 26) (1976), and in particular footnote one.

for the appellee was appropriate. See also *Godwin v. Gibson's Prods.*, 121 Ga. App. 59 (172 SE2d 467) (1970).

3. It was uncontroverted that the appellee's company policy did not provide for sick pay benefits where the employee's absence was due to the employee's own misconduct. Although the appellant steadfastly denied having stolen any store goods, she admitted that she had improperly transported goods from one store area to another without authorization. The appellant may very well have experienced anxiety over the appellee's investigation of her conduct, but the appellee's withholding of sick pay benefits certainly comported with the company policy.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED JANUARY 6, 1986 —
REHEARING DENIED JANUARY 28, 1986.

*Scott Walters, Jr.,* for appellant.
*John F. Wymer III, Ginger S. McRae,* for appellee.