A96A0623. SEVCECH et al. v. INGLES MARKETS, INC. et al.
(474 SE2d 4)

RUFFIN, Judge.

Duane and Kathy Sevcech sued Ingles Markets, Inc. and three Ingles' employees (collectively "Ingles") for damages allegedly resulting from Ingles wrongfully accusing Mr. Sevcech of shoplifting. The Sevcechs' complaint contains 11 counts asserting various causes of action and alleging that while they were shopping at Ingles' market, three employees loudly accused Mr. Sevcech of shoplifting, forced him to submit to a body search, knocked him to the ground, and had him arrested. The trial court granted Ingles' motion for partial summary judgment on the Sevcechs' claims under Georgia's Racketeer Influenced & Corrupt Organizations Act ("RICO"), OCGA § 16-14-1 et seq., slander, intentional infliction of emotional distress, negligent hiring, and loss of consortium, and denied the Sevcechs' motion to compel certain discovery responses. For reasons which follow, we affirm the trial court's order with the exception of its grant of summary judgment to Ingles on Mr. Sevcech's claims for slander and intentional infliction of emotional distress.

"[A]t summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. In other words, summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

1. In two enumerations of error, the Sevcechs contend the trial court erred in granting Ingles summary judgment on their RICO claim. The Sevcechs allege that Ingles' conduct constituted a pattern of racketeering activity under OCGA § 16-14-4. The complaint fur-

ther alleges that "Ingles, through this pattern of racketeering activity, acquired or maintained an interest in . . . personal property and money [and that the three individual defendants] participated in the enterprise through this pattern of racketeering activity." In establishing the pattern of racketeering activity, the Sevcechs apparently rely on previous incidents where Ingles' employees have falsely accused customers of shoplifting. The trial court ruled that the Sevcechs "failed to sufficiently establish a 'pattern of racketeering' which is required under subsections a, b and c of OCGA § 16-14-4. Furthermore, [the Sevcechs] have failed to adequately establish 'enterprise' under OCGA § 16-14-4 (b)."

OCGA § 16-14-4 (a) provides that "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (b) provides that "[i]t is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." The General Assembly enacted RICO "to impose sanctions against [the] subversion of the economy by organized criminal elements and to provide compensation to private persons injured thereby. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct be prosecuted under this chapter but only an interrelated pattern of criminal activity, *the motive or effect of which is to derive pecuniary gain*. This chapter shall be construed to further that intent." (Emphasis supplied.) OCGA § 16-14-2 (b).

Construing OCGA § 16-14-4 in light of the legislative intent, it is clear that RICO applies to a pattern of criminal activity where it is directed towards acquiring or maintaining something of pecuniary value. Mere evidence that a person's criminal conduct constitutes a pattern of racketeering activity is insufficient; RICO's remedial provisions are intended to address "the increasing extent to which criminal activities and funds acquired as a result of criminal activity are being directed to and against the legitimate economy of the state." OCGA § 16-14-2 (a).

Accordingly, pretermitting the question of whether Ingles' conduct in falsely accusing customers of shoplifting constituted a "pattern of racketeering activity" or whether Ingles' employees participated in an enterprise through a pattern of racketeering activity, we find that the General Assembly did not intend for RICO to proscribe the alleged conduct in this case. Even if falsely accusing customers of shoplifting constitutes a pattern of criminal activity, under the facts of this case it is not conduct intended to derive pecuniary gain as is required by the statute and alleged in the Sevcechs' complaint. Fur-

thermore, although the Sevcechs are to receive the benefit of all reasonable inferences from the evidence, we cannot conceive how Ingles or its employees had anything to gain, pecuniary or otherwise, from falsely accusing customers of shoplifting. We conclude that the trial court did not err in granting Ingles summary judgment on the Sevcechs' RICO claim. See *Moore v. Barge*, 210 Ga. App. 552 (3) (436 SE2d 746) (1993).

2. Mr. Sevcech asserts the trial court erred in granting Ingles summary judgment on his slander claim. Mr. Sevcech alleged in the complaint that when he was speaking with Ingles' employees in the store office, they accused him "in a loud voice, of having stolen a butane lighter . . . [and that] all of the patrons at the front of the store could and did hear the accusations." The trial court granted Ingles' motion upon finding "no evidence that a third party heard the alleged slanderous statements."

The record shows that an Ingles' cashier was standing nearby at the time the statements were made. The cashier stated that she heard the Ingles' managers "arguing with [Mr. Sevcech] that he had stolen something. . . ." The evidence further showed that there was moderate to heavy traffic in the store at the time, that you could hear the commotion in the office from the cash registers, and that some of the customers standing at the registers could have observed the incident.

Although there is no evidence of record that anyone other than the cashier heard the statement, viewing the facts and reasonable inferences from those facts in a light most favorable to Mr. Sevcech, we conclude that the trial court erred in granting summary judgment on this count. Where there is evidence that allegedly slanderous statements are spoken audibly, and loud enough to be heard, a jury issue is created as to whether the statements were heard. *Walter v. Davidson*, 214 Ga. 187, 190 (1) (104 SE2d 113) (1958). In this case a jury question remains as to whether any of the customers at the cash registers heard the statement.

3. Mr. Sevcech asserts that the trial court erred in granting Ingles summary judgment on his claim for intentional infliction of emotional distress. The trial court found that there was no evidence that Mr. Sevcech's emotional distress is severe. We disagree.

"Four elements must be present to support a claim of intentional infliction of emotional distress: (1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. [Cit.]" *Johnson v. Savannah College &c.*, 218 Ga. App. 66, 67 (460 SE2d 308) (1995). "[T]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to

endure it. The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress. . . . It is for the court to determine whether on the evidence severe emotional distress can be found." (Citation, punctuation and emphasis omitted.) *Moses v. Prudential Ins. &c.*, 187 Ga. App. 222, 226 (369 SE2d 541) (1988). In determining the reasonableness of the distress, a court must consider whether the defendants' conduct was outrageous or egregious. *Carroll v. Rock*, 220 Ga. App. 260 (2) (469 SE2d 391) (1996).

In this case there is evidence sufficient for a jury to find that Mr. Sevcech's emotional distress was severe, reasonable and justified under the circumstances. There is evidence in the record showing Ingles' employees took Mr. Sevcech to the store office where he was accused of shoplifting, assaulted and battered by an Ingles' employee. Despite the fact that the Ingles' employees found no stolen merchandise on Mr. Sevcech, they called the police and had him arrested, whereupon police placed Mr. Sevcech in the back of the police car. This evidence is sufficient to create a jury issue as to whether the employees' conduct was outrageous. Furthermore, Mr. Sevcech stated in his deposition that the event makes him sick, that he trembles when he thinks about it, and that he is full of shame and cannot look at his children. Considering the nature of the conduct that spurred these reactions, a jury would be authorized to find that Mr. Sevcech's distress was not exaggerated. Under these circumstances, we find the evidence sufficient to authorize a finding that Ingles intentionally inflicted upon Mr. Sevcech severe emotional distress. Accordingly, the trial court erred in granting Ingles summary judgment on this count. See *Davis v. Copelan*, 215 Ga. App. 754 (6) (452 SE2d 194) (1994).

4. Mrs. Sevcech asserts that the trial court erred in granting Ingles summary judgment on her claim for intentional infliction of emotional distress. We disagree.

Implicit in the requirement that the conduct be intentional is the requirement that it be directed towards the complainant. See *Jackson v. Nationwide Credit*, 206 Ga. App. 810 (2) (426 SE2d 630) (1992). Where the conduct is directed towards others, not the complainant, he or she cannot establish a necessary element of the claim. Id.

In this case, Mrs. Sevcech contends there is evidence creating a jury issue as to whether Ingles' conduct was directed towards her. She cites evidence in the record that she saw Mr. Sevcech in the store office and later saw him seated in the police car. However, even construing this evidence and any reasonable inferences in Mrs. Sevcech's favor, it does not show that Ingles directed its conduct toward her. Accordingly, we agree with the trial court that there is insuffi-

cient evidence to create a jury issue as to Mrs. Sevcech's claim for intentional infliction of emotional distress. See id.

5. Mrs. Sevcech asserts that the trial court erred in granting Ingles summary judgment on her claim for negligent hiring. However, this cause of action is dependent on the survival of Mrs. Sevcech's claim that the Ingles' employees were directly liable to her for intentional infliction of emotional distress. See *Harvey v. Kidney Center &c.,* 213 Ga. App. 319, n. 1 (444 SE2d 590) (1994); *Duke Trucking Co. v. Giles,* 185 Ga. App. 833 (2) (366 SE2d 216) (1988). Because we held in Division 4 that the trial court correctly granted Ingles summary judgment on Mrs. Sevcech's emotional distress claim, this claim must also fail.

6. Mrs. Sevcech asserts that the trial court erred in granting Ingles summary judgment on her claim for loss of consortium. We disagree.

A claim for loss of consortium is based on the loss of " 'a property right growing out of the marriage relationship, and includes the exclusive right to the services of the spouse and to the society, companionship, and conjugal affection of each other.' [Cits.]" *Arnac v. Wright,* 163 Ga. App. 33, 34 (292 SE2d 440) (1982). The trial court found that there was no evidence Mrs. Sevcech's relationship with her husband has been affected by the incident, and we agree.

In her deposition, Mrs. Sevcech testified that the incident has not in any way changed her home life or relationship with her husband, including her physical relationship. She further testified that she has not in any way been deprived of her husband's services as a result of the incident. Although she stated that his conduct has changed when they visit stores together, she did not claim that these changes resulted in any loss of services or companionship. Rather, Mrs. Sevcech testified that her husband "stays close by" when they go to stores. Such a change in conduct does not amount to a loss of consortium. Accordingly, we conclude that the trial court did not err in granting Ingles summary judgment on this claim.

7. Neither did the trial court err in granting Ingles' motion for summary judgment on Mr. Sevcech's loss of consortium claim. Loss of consortium claims are derivative. *Rogers v. Fred R. Hiller Co. &c.,* 214 Ga. App. 448 (3) (448 SE2d 46) (1994). As the trial court correctly granted summary judgment on Mrs. Sevcech's claims, Mr. Sevcech's loss of consortium claims were no longer viable. Id.

8. Finally, the Sevcechs assert that the trial court erred in denying their motion to compel Ingles to produce statements taken by a private investigator from Ingles' employees. The Sevcechs concede that they would not ordinarily be entitled to the statements because they were prepared in anticipation of litigation. See *Lowe's of Ga. v. Webb,* 180 Ga. App. 755 (350 SE2d 292) (1986). However, they con-

tend that Ingles waived any objections to the request because it failed to timely file any objections. We disagree.

The Sevcechs apparently served the discovery request with their complaint on July 8, 1994. Ingles' registered agent mailed the complaint to an Ingles' vice-president who did not recall whether any discovery requests were attached to the complaint. On August 23, 1994, the Sevcechs' attorney wrote Ingles demanding responses to the requests. After Ingles informed the Sevcechs' attorney they had not received the requests, he sent a copy and informed Ingles that if it provided responses within six days he would not seek sanctions. Ingles served responses and objections to the discovery six days later. The trial court found that Ingles' failure to timely file objections was due to excusable neglect and denied the Sevcechs' motion.

" 'The trial court is vested with a broad discretion over the use of discovery procedures and unless there is a clear abuse of its discretion, appellate courts will not interfere in its rulings.' [Cit.]" *Dept. of Transp. v. APAC-Ga.*, 217 Ga. App. 103, 108 (7) (456 SE2d 668) (1995). We find no abuse of discretion in the trial court's denial of the Sevcechs' motion.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Johnson, J., concur.*

DECIDED JUNE 17, 1996 —
RECONSIDERATION DENIED JULY 11, 1996 — 

*John T. Longino*, for appellants.
*Johnson & Kane, Frederick A. Johnson*, for appellees.