A09A0396. ABDUL-MALIK v. AIRTRAN AIRWAYS, INC. et al.

(678 SE2d 555)

MIKELL, Judge.

This is an appeal from the grant of summary judgment to all defendants in an action for intentional infliction of emotional distress filed by Mahmoud Abdul-Malik based on events underlying his termination from AirTran Airways, Inc. The defendants/appellees are AirTran Airways, Inc.; Stanley D. Whitehead, the Director of the Atlanta Station, with overall responsibility for AirTran's operation, employees, and assets in Atlanta; Michael L. Brown, the Manager of System Baggage Service; Rick Pelc, General Manager of the Atlanta operation; Charles West, a retired special agent with the United States Department of Justice, Drug Enforcement Administration, who worked for All-N-1 Security Services, Inc. ("All-N-1"), a security firm with whom AirTran contracted to investigate theft from checked baggage; and Calvin J. Cole, Jr., a detective with the City of Atlanta Police Department who was assigned to the airport station. For the reasons set forth below, we affirm the grant of summary judgment to all defendants.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable

---

[9] Compare *Garrett v. State,* 188 Ga. App. 176, 177 (3) (372 SE2d 506) (1988) with *Donaldson v. State,* 244 Ga. App. 89, 91 (4) (534 SE2d 839) (2000).

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

Properly viewed, the record shows that AirTran hired Abdul-Malik on January 16, 2004, to work as a ramp agent at Hartsfield-Jackson Atlanta International Airport. In August 2005, AirTran began experiencing an increasing number of complaints of theft from checked baggage at the airport and contracted with All-N-1 to assist in investigating these incidents. During the course of the investigation, West, All-N-1's investigator who became its chief operating officer, deposed that he received a telephone call at home from an unidentified male on November 11, 2005. The caller accused West of "messing with" the caller's buddies and threatened to blow up West's house. West observed from the caller identification device that the call was made from AirTran's general number at the airport. West testified that he reported the call to either Whitehead or Brown.

Charles Carter, an undercover operative for All-N-1 who worked as an AirTran employee, overheard Abdul-Malik admit making the threatening call to West and reported it in an e-mail to Chana Reed Rogers,[2] All-N-1's human resources manager, on November 14, 2005. Specifically, the e-mail states that while sitting in the office with a number of other employees waiting for a plane to arrive, Carter heard Abdul-Malik say to James Hegarty, another ramp agent, "I am going to find out where Mr. West lives and I am going to blow his house up for what he did to Sixty-Nine." Hegarty then asked who West was and what he did to Sixty-Nine. Abdul-Malik responded that West "tries to get people fired for no reason. . . . I called his ass to scare him but he hung up on me." Whitehead averred that the e-mail was forwarded to him on November 15.

Abdul-Malik deposed that on November 30, 2005, an AirTran manager came to Concourse D, where Abdul-Malik was working, and escorted him to Whitehead's office for a meeting. Detective Cole was present, and Whitehead introduced Abdul-Malik to him. Brown was present but did not speak. Whitehead explained that AirTran was conducting an investigation into terroristic threats that had been made to West. Abdul-Malik deposed that Whitehead asked if he was Muslim, and Abdul-Malik replied affirmatively. Whitehead asked Abdul-Malik if he knew West. Abdul-Malik said he did not. According to Abdul-Malik, Cole said, "I see your heart beating through your

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Accord *Holbrook v. Stansell*, 254 Ga. App. 553-554 (562 SE2d 731) (2002).

[2] Rogers was married in 2007; the e-mails were sent in 2005 and thus reflect her maiden name.

chest. You're . . . guilty." Abdul-Malik also deposed that Cole called him a liar and a terrorist. Abdul-Malik asked for an attorney. He was not questioned further, and he was not detained. Abdul-Malik never saw Cole again. Whitehead informed Abdul-Malik that he would be suspended with pay pending an investigation and instructed him to hand over his badge. Abdul-Malik was terminated on December 9, 2005, for making a false statement during the investigation.[3] He was never prosecuted.

Hegarty testified by affidavit that he was sitting in a room on Concourse D before starting his shift when Abdul-Malik came in, walked toward a desk where a computer and telephone were located, and stated that he was going to call West and "mess with him." Abdul-Malik was holding what appeared to be a business card, which he referenced when dialing the number. Abdul-Malik put the call on speaker phone, and Hegarty heard a man answer and say "Charles West." Hegarty heard Abdul-Malik ask West, "Why are you messing with my boys at AirTran?" Hegarty averred that West then hung up. Hegarty stated that he met with Whitehead and Brown on December 2, 2005, and reported this information to them.

Whitehead averred that suspension with pay is standard proto-col pending investigation of an employee; that following the meeting, Whitehead continued to investigate the matter by interviewing other AirTran employees; and that as a result of the investigation, AirTran determined that Abdul-Malik had been involved in misconduct that violated company policies, warranting his termination. Pelc con-curred in this decision and issued the termination letter to Abdul-Malik. According to the crew member handbook, "[f]ailure to coop-erate or lying in a Company investigation" is prohibited conduct, which may result in termination.

In her deposition on August 22, 2007, Rogers stated that she did not remember any undercover operatives sending her an e-mail and that she would not have received reports from undercover agents because she dealt with payroll. Subsequently, however, a forensic information expert created a forensic image of the hard drive on Rogers's computer, located correspondence related to All-N-1's undercover operatives, and downloaded the e-mails. After Rogers reviewed them, she testified that her recollection was refreshed; that she did receive e-mail correspondence from the undercover opera-tives containing their daily activity logs; that she received the e-mail in question from Carter; that she forwarded the e-mail to an

---

[3] Abdul-Malik filed a discrimination claim against AirTran with the U. S. Equal Employment Opportunity Commission. After investigating the claim, the EEOC determined that it was unable to conclude that AirTran had violated any applicable statute.

assistant to the president of All-N-1; that a modified version of the e-mail was sent from her computer to Whitehead, but she did not know who modified the e-mail;[4] and that she responded to Carter's e-mail, thanked him, and asked him for additional information.

In his fifth amended complaint, Abdul-Malik asserted an intentional infliction of emotional distress claim against AirTran, Whitehead, Brown, Pelc (hereinafter collectively referred to as "AirTran appellees"), West, and Cole. Abdul-Malik contended that the individual defendants, except Cole, conspired to commit intentional infliction of emotional distress by fabricating the allegations, and that Cole committed intentional infliction of emotional distress by falsely accusing him of making terroristic threats. Abdul-Malik contended that all individual defendants were joint tortfeasors with AirTran. Abdul-Malik further alleged that AirTran was liable under a respondeat superior theory for its employees' actions and that AirTran was liable for the actions of West and Cole under an agency theory.

Cole filed a motion for summary judgment on September 7, 2007. The trial court granted the motion after a hearing. Abdul-Malik filed a motion to compel against AirTran on November 26, 2007, seeking, among other things, personnel records of 13 of his co-workers. The AirTran appellees and West filed a joint motion for summary judgment on May 6, 2008. The trial court heard argument on both motions on August 26. In separate orders, the trial court denied the motion to compel and granted the motion for summary judgment. Abdul-Malik appeals from these three orders. Although Abdul-Malik enumerates four errors in his brief, he argues three together, and we address them in that manner below.[5]

1. Abdul-Malik argues that, in granting summary judgment, the trial court erroneously failed to construe the evidence in the light most favorable to him, as the nonmovant. Abdul-Malik contends that the evidence, when properly construed, raises jury issues as to whether West fabricated the e-mail, or caused its fabrication, and whether the AirTran appellees conspired to cause the fabrication. Abdul-Malik asserts that the conspiracy caused him emotional distress, and that the trial court erred in relying solely on the meeting of November 30, 2005, in reaching its conclusions. There is no merit in these assertions.

To recover on an intentional infliction of emotional distress

---

[4] Carter's name was redacted from the e-mail sent to Whitehead, and a misspelled word was corrected. The substance of the e-mails is otherwise identical.

[5] Appellant's brief violates Court of Appeals Rule 25 (c) (1), which states: "The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."

claim, a plaintiff must show evidence that: (1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe.[6] The evidence in this case does not show either extreme and outrageous conduct or severe emotional harm.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been extreme and outrageous.[7]

Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[8] Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law.[9] If there is evidence from which a reasonable person could find severe emotional distress resulting from extreme and outrageous conduct, then the issue is for the jury.[10]

In the case at bar, Abdul-Malik has framed the dispositive issue as the alleged fabrication of the e-mails of November 14 and 15, 2005. In doing so, however, he ignores critical undisputed evidence. All-N-1's undercover operative, Carter, unequivocally deposed that he sent the e-mail in which he overheard Abdul-Malik state that he threatened to blow up West's house. Hegarty, Abdul-Malik's co-worker, testified that he was present when Abdul-Malik called West on the date West received the threatening call. Abdul-Malik has provided no evidence to contradict the testimony of these witnesses on this dispositive issue.

---

[6] *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 822 (4) (658 SE2d 433) (2008) (whole court).

[7] (Punctuation and footnote omitted.) *Jarrard v. United Parcel Svc.*, 242 Ga. App. 58, 61 (529 SE2d 144) (2000).

[8] (Citation and punctuation omitted.) *Biven Software v. Newman*, 222 Ga. App. 112, 113-114 (1) (473 SE2d 527) (1996).

[9] *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991).

[10] See id. (jury issue present as to whether plaintiff was demoted in retaliation for testifying in sexual harassment action against employer); *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 500-501 (469 SE2d 776) (1996) (factual issue existed as to whether employer forced employee to resign in retaliation for sexual harassment claim and in so doing threatened plaintiff's physical health).

Thus, even if we deem Rogers' testimony contradictory and discard it in its entirety,[11] as Abdul-Malik urges, there is uncontradicted testimonial evidence that the e-mail was sent to her by Carter. Abdul-Malik's theory that the AirTran appellees and West conspired to fabricate e-mails is based on rampant speculation regarding, inter alia, discrepancies in various e-mails and depositions on nondispositive issues. "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."[12]

Moreover, we conclude that the conduct of the defendants during the meeting of November 30, 2005, did not rise to the level of "extreme and outrageous." At the outset, we note that only defendants Whitehead, Brown, and Cole attended the meeting, and Brown did not speak. Furthermore, Carter's e-mail gave Whitehead reasonable grounds to investigate whether Abdul-Malik made a terroristic threat using an AirTran telephone while he was on duty.[13] Construed in Abdul-Malik's favor, the evidence shows that during the meeting, Whitehead asked if he was Muslim. Detective Cole called him a terrorist and a liar, and told him he was guilty. Cole did not touch Abdul-Malik and did not detain him.[14] "Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life."[15] The same is true of false accusations of dishonesty in the workplace.[16] Under the totality of the circumstances, the conduct of defendants Whitehead and Cole at the meeting did not exceed the bounds usually tolerated by society; thus, it was not "extreme and outrageous."[17]

---

[11] See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30-31 (3) (343 SE2d 680) (1986) (party's contradictory testimony will be construed against her).

[12] (Punctuation and footnote omitted.) *Alexander v. A. Atlanta Autosave*, 272 Ga. App. 73, 75 (1) (611 SE2d 754) (2005).

[13] See *Kramer v. Kroger Co.*, 243 Ga. App. 883, 888 (3) (a) (534 SE2d 446) (2000) (fact that plaintiff's initials appeared on missing "cash drop" gave employer reasonable cause to suspend and investigate her; disciplinary action was not extreme or outrageous). See also OCGA § 16-11-37 (a): "A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence."

[14] An on-duty police officer conducting an investigation is shielded by qualified immunity from a claim of intentional infliction of emotional distress. *Conley v. Dawson*, 257 Ga. App. 665, 669 (3) (572 SE2d 34) (2002). Although Cole asserted this argument in his motion for summary judgment, he has not raised it on appeal. Therefore, we do not address it.

[15] *Jarrard*, supra at 59.

[16] See *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (2) (404 SE2d 442) (1991) ("[a] false accusation . . . in connection with one's employment conduct is undoubtedly a distressful, even 'horrifying' and traumatizing insult, but it is a common vicissitude of ordinary life").

[17] See *Crowe v. J. C. Penney*, 177 Ga. App. 586, 588 (1) (340 SE2d 192) (1986) (summary judgment affirmed on intentional infliction of emotional distress claim where employer interrogated plaintiff for theft, called her a liar, slammed his hands on the desk, and yelled at her).

Finally, we conclude that Abdul-Malik did not produce evidence of the fourth element of an intentional infliction of emotional distress claim; namely, that the emotional harm he suffered was "severe."

> [E]motional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.[18]

Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide.[19] In the case at bar, Abdul-Malik testified that after the meeting, he could not sleep and eventually gained 15 pounds. He did not take medication or seek professional help. While unpleasant, the sleeplessness and weight gain are not so severe that no reasonable person could be expected to endure them.[20] It follows that the trial court did not err in granting the defendants' motions for summary judgment.

2. Abdul-Malik's remaining enumeration of error, addressing the denial of his motion to compel discovery, is rendered moot by our holding in Division 1.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 14, 2009 ▮▮▮▮▮▮▮▮

*Herald J. A. Alexander*, for appellant.
*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske,*

---

[18] (Citations and punctuation omitted; emphasis omitted and supplied.) *Peoples*, supra at 121 (2).

[19] *Moses v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 226 (369 SE2d 541) (1988).

[20] See *Witter v. Delta Airlines*, 966 FSupp. 1193, 1201 (N.D. Ga. 1997), aff'd, 138 F3d 1366 (11th Cir. 1998) (anxiety, sleeplessness, overeating, diarrhea and headaches, were not "severe" for purposes of intentional infliction of emotional distress claim). See also *Odem v. Pace Academy*, 235 Ga. App. 648, 656 (2) (510 SE2d 326) (1998) (where plaintiff suffered "marginally high" blood pressure but sought no professional advice, emotional distress was not severe). Compare *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 223-224 (3) (474 SE2d 4) (1996) (jury issue existed as to whether emotional distress was severe; customer accused of shoplifting was taken to office, where employee assaulted and battered him, called police, and had plaintiff arrested, even though no stolen items were found on him).

Smith, Gambrell & Russell, Matthew W. Clarke, Caitlin E. Bannigan, for appellees.