A08A1038. MIZE et al. v. McGARITY et al.
(667 SE2d 695)

RUFFIN, Presiding Judge.
Margaret McGarity, Phyllis M. Vann, and Elaine Adams (the "petitioners") filed an action for declaratory judgment, injunctive relief, and trespass, alleging that Van Mize and Edna Mize were improperly interfering with the petitioners' rights to easements located on the Mizes' property. Following a bench trial, the trial court found in favor of the petitioners, concluding that they had easements for maintenance, ingress, and egress across two driveways and for the use of stairs located on the Mizes' property. The court also enjoined the Mizes from further trespass and awarded attorney fees to the petitioners. The Mizes appeal, alleging in four enumerations that the trial court erred in concluding that the petitioners had easements on the Mizes' property.[1] The Mizes also contend that the trial court erred in finding that they had trespassed on the petitioners' property and in awarding attorney fees to the petitioners. For reasons that follow, we affirm.

On appeal from a bench trial, the trial court's factual findings are equivalent to a jury verdict.[2] Thus, we will affirm the trial court's

[19] *In re R. L. Y.*, 181 Ga. App. 14, 16 (351 SE2d 243) (1986).
[20] See *In the Interest of C. T. L.*, 182 Ga. App. 845, 846 (357 SE2d 298) (1987) (failure of juvenile court to apply correct standard of proof required case be remanded for further findings); *In re R. L. Y.*, supra at 17.
[1] The petitioners filed their notice of appeal in the Supreme Court of Georgia, which transferred the case to this Court for disposition.
[2] See *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 884 (1) (663 SE2d 379) (2008).

decision if it is supported by any evidence.[3] However, we apply the plain legal error standard of review to legal issues.[4]

Viewed in a light favorable to the judgment,[5] the evidence shows that Lots 4, 5, and 6 are adjoining lakefront properties in the Chestatee Resort Subdivision at Lake Lanier. Lamar McGarity purchased Lot 4 in July 1965. Around the same time, his brother-in-law, Frank Davis, purchased Lot 5, and Davis's co-worker, Eddie Howard, and his brother, Jimmy Howard, purchased Lot 6.[6]

Initially, the owners accessed their properties by boat. Thereafter, the owners of the three lots agreed to grade and prepare a driveway that they could all use to access their property from the public road. Because the steep terrain on Lot 4 made it an economically impractical location for the driveway, the owners decided to place it on Lots 5 and 6, with the line between the two properties running down the middle of the joint driveway. They agreed, however, to evenly split the costs of constructing the driveway, with one third of the cost allocated to each of the three lots.

The driveway was initially cleared and graded in 1965 or 1966, with the owners of all three lots sharing the cost.[7] The driveway ran from the existing public road — Woodland Circle, which adjoined the three lots — to the lake. At the end of the driveway, there were four mailboxes, labeled "J. Howard," "Eddie Howard," "L. F. Davis," and "L. McGarity." Additionally, there was a large iron gate across the end of the driveway, for which each owner had a key. The owners also erected and shared the costs of a communal outhouse, electric power pole, dock, well, and pavilion; they also jointly brought in sand to make a communal beach area. In 1966 or 1967, McGarity and Davis paid and arranged for the installation of a set of concrete stairs that began on Lot 4 and ended on Lot 5 that gave the McGaritys access from their property to the lake.

The owners had to re-grade and re-gravel the initial driveway — again, sharing the cost equally — multiple times because of erosion, and therefore, in approximately 1970, they pooled their money and installed concrete runners on the driveway. When the runners proved ineffective, they decided to pave the joint driveway. McGarity, Davis, and Howard each helped to install the wooden frame, and

---

[3] See id.

[4] See id.

[5] See id.

[6] The McGaritys, the Davises, and the Howards purchased the lots after visiting the lake together.

[7] Although the record is unclear regarding the precise date of his death, Jimmy Howard died after he purchased the property. Eddie Howard continued to contribute to the costs of the driveway and other improvements.

then they shared the cost of the concrete. The owners of the three lots also agreed to install two adjacent parking pads on Lots 4 and 5; the McGaritys, who contributed toward the cost of the pads, used them as a roadway to access the joint driveway from their property. At some point, the owners built houses on each of the three lots at issue.

In 1980, Howard sold Lot 6 to Edna Mize. The warranty deed stated that the conveyance was made subject to the "[j]oint [d]riveway . . . between this Lot 6 and adjacent Lot 5." After the purchase, Mize and Davis shared the joint driveway. Then, in 1984, Mize purchased Lot 5 from Davis, thus consolidating Lots 5 and 6 in a single owner; the warranty deed contained the same description of the joint driveway as the deed from the 1980 conveyance of Lot 5. In 1994, Lamar McGarity deeded Lot 4 to his wife, Margaret McGarity. In July 1999, Margaret McGarity deeded the property to her daughter, Phyllis Vann, reserving a life estate in the property. During this time, Mize, who lived in a home on Lot 6, permitted the McGarity family to continue to use the joint driveway and the roadway on Lot 5.

In 1999, McGarity and Vann asked Mize to grant them an easement to use the joint driveway. Mize refused, but she allowed them to continue to use the driveway. In 1999 or 2000, McGarity and Vann built a driveway on Lot 4, providing direct access to the main road. However, because of the steep slope of the new driveway, they continued to use the joint driveway and the roadway across Lot 5 when towing their boat.

Thereafter, Mize planted multiple trees on Lot 5, including across the gravel roadway that the McGaritys used to access the joint driveway. At some point during the first half of 2005, the Mizes removed the concrete stairs located on Lot 5.

In June 2005, the petitioners, McGarity, Vann, and Adams,[8] filed suit against the Mizes, seeking a declaratory judgment stating that they had easements in the joint driveway located on Lots 5 and 6, the roadway on Lot 5, and the area where the concrete steps had been on Lot 5. The petitioners also sought attorney fees and to enjoin the Mizes from trespassing on or otherwise interfering with the easements. The parties filed cross-motions for summary judgment, which the trial court denied. Following a bench trial, the trial court found in favor of the petitioners, granting them the easements they sought pursuant to OCGA § 44-9-4 and awarding them $12,000 in attorney fees.

---

[8] Vann deeded a one-half interest in Lot 4 to her sister, Elaine Adams, in May 2005.

1. The Mizes challenge the trial court's conclusion that the petitioners have easements to the roadway on Lot 5 and the joint driveway. In the final order, the trial court stated that

[t]he Agreement by [the petitioners'] predecessor in title, Lamar McGarity, with the Howards and Davis[,] followed by the construction and improvement of the north-south driveway between Lots 4 and 5 and the east-west driveway across Lot 5 to the McGarity home caused to be vested in Lamar McGarity an irrevocable easement for the use and maintenance of said driveways pursuant to OCGA § 44-9-4[,] and upon the [petitioners'] succeeding to McGarity's title[,] they too are vested with an irrevocable easement thereon.

Pursuant to OCGA § 44-9-4, a parol license to use another's land "is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land." According to the Supreme Court of Georgia, "[t]he principle embodied in this section is that[,] if the enjoyment of the license must necessarily be preceded by the expenditure of money and the licensee has incurred expense in executing it, the license becomes an agreement for a valuable consideration and the licensee a purchaser for value."[9]

Here, the Mizes apparently do not contest the trial court's conclusion that the petitioners' predecessors had a verbal agreement to use the roadway and joint driveway and that they expended money to have it paved. Certainly, the evidence admitted at trial supported such a conclusion. Instead, the Mizes argue that the McGaritys' use of the joint driveway was not *"preceded* by the expenditure of money," as required by Georgia law.[10] But the record clearly establishes that the original owners of the three lots at issue equally shared the costs associated with the initial and subsequent clearing and grading of the driveway. And the McGaritys expended money for the concrete pads that comprised the roadway on Lot 5. Thus, the record supports the trial court's conclusion that the petitioners had an irrevocable easement in the joint driveway and the roadway on Lot 5 pursuant to OCGA § 44-9-4.[11]

---

[9] *Miller v. Slater*, 182 Ga. 552, 558 (186 SE 413) (1936).

[10] (Emphasis in original.) *McCorkle v. Morgan*, 268 Ga. 730, 731 (492 SE2d 891) (1997).

[11] See *Lowe's Home Centers v. Garrison Ridge Shopping Center Marietta*, 283 Ga. App. 854, 855 (643 SE2d 288) (2007); *Bell Indus. v. Jones*, 220 Ga. 684, 686-688 (141 SE2d 533) (1965); *Mathis v. Holcomb*, 215 Ga. 488, 488-490 (1) (111 SE2d 50) (1959); *Brantley v. Perry*,

2. As subsequent purchasers, the Mizes can only be burdened with the easement if the record demonstrates that they had notice of the easements when they took possession of their property.[12] Although

> a bona fide purchaser from the grantor without knowledge or constructive notice of the existence of the easement would take title free from the easement, and he may assume that there is no easement except as shown of record or by open and visible indications on the land itself, such purchaser will be charged with notice of the easement where an inspection of the premises would have readily revealed such physical facts as would, in the exercise of ordinary diligence, put him upon inquiry.[13]

The Mizes allege that there was no evidence that they had notice of the easement at the time they acquired their property. We disagree.

In general, whether property contains a feature that constitutes a condition sufficient to require a purchaser to employ a " 'reasonable and prudent investigation' " is a determination for the factfinder.[14] "However, when the easement being enjoyed is open and observable to any reasonably prudent person, the question of notice is not one of fact but one of law."[15]

The warranty deeds conveyed to the Mizes for Lots 5 and 6 did not refer to any easement in favor of Lot 4. However, evidence admitted at trial showed that when the Mizes purchased both Lots 5 and 6, there was a clearly labeled mailbox at the end of the driveway for the owners of each of three lots. There was also a locked gate across the driveway, to which the McGaritys had a key. It is undisputed that the joint driveway and the roadway on Lot 5 were the only paved paths providing access between Lot 4 and the public road, and there is no evidence that this was not apparent to the Mizes at the time they purchased their property. Finally, the McGaritys were openly using the driveway and roadbed at and after the time the Mizes acquired their property. Under these circumstances, the trial court was authorized to conclude that the Mizes had notice of the easements when they took possession of their property.[16]

---

120 Ga. 760, 761-762 (48 SE 332) (1904).

[12] See *Lowe's*, supra at 856.

[13] *Burk v. Tyrrell*, 212 Ga. 239, 243 (3) (91 SE2d 744) (1956).

[14] *Lowe's*, supra.

[15] (Punctuation omitted.) Id.

[16] See *Mathis*, supra at 490 (1); *Lowe's*, supra at 857.

3. The Mizes further contend that the petitioners abandoned their rights to the easements. "The right to an easement may be lost by abandonment or forfeiture by non-user; but the forfeiture will not be incurred unless the non-use[ ] be for a period sufficient to raise the presumption of a release or abandonment."[17] Here, however, there was testimony presented that the McGaritys and their family members and guests continued to use the joint driveway and roadway after the Mizes acquired their property. And although there was evidence that the petitioners mainly used the property on the weekends and as a vacation home, they did use the joint driveway and roadway when the house was occupied. Under these circumstances, the trial court's conclusion that the petitioners did not abandon or forfeit their easement through nonuse was supported by the evidence.[18]

4. The Mizes also allege that the trial court erred in concluding that the petitioners have an easement for the concrete stairs on Lot 5. First, they contend that there was no evidence that the petitioners' use of the steps was preceded by necessary expenditures. However, there was testimony at trial that McGarity and Davis paid and arranged for the installation of the concrete stairs to give the McGaritys access to the lake from Lot 4.

The Mizes further maintain that there was no evidence that they had notice of the alleged easement in the steps. Again, this argument affords them no relief. The stairs on Lot 5 descended from Lot 4. According to trial testimony, the steep terrain on Lot 4 made it difficult or impossible to access the lake without using the steps.[19] Given the evidence presented, the trial court was authorized to conclude that the Mizes had notice of the stairway easement.[20]

Finally, citing *Smith v. Jensen*,[21] the Mizes allege that "stairway easements are intended for the purpose of ingress and egress only" and "[t]here is no evidence in the record that suggests that the removal of the concrete blocks from [the Mizes'] property prohibited the [Mizes'] right to ingress and egress." Given the testimony that the steep terrain of Lot 4 essentially required the use of the stairway for access to the lake, this argument is not supported by the evidence. Moreover, the Mizes' reliance on *Smith v. Jensen* is

---

[17] (Punctuation omitted.) *Mathis*, supra at 489.

[18] See id. at 489-490.

[19] The testimony was that the McGaritys "used those steps to go from the trailers down to the property, to the lake, because the land, it was – the terrain was such that you couldn't walk it without having some help."

[20] See *Mathis*, supra; *Hofrichter/Stiakakis*, supra (the any evidence standard of review applies to bench trials).

[21] 156 Ga. 814 (120 SE 417) (1923).

YALE LAW LIBRARY

misplaced. In *Smith*, the plaintiff, who had a right to use the stairway and hallway to access his leased office in a commercial space, also claimed the right to hang advertising in the stairway and hallway.[22] The Supreme Court of Georgia rejected the plaintiff's argument, holding that "[t]he right of ingress and egress does not confer upon the tenant any other use of the stairway and hallway."[23] This holding has no application to the instant case, where there is no evidence that the petitioners sought the use of the stairway easement for any purpose other than access to the lake.

5. The Mizes argue that the trial court erred in finding that they committed wilful trespass by planting trees across the roadway on Lot 5. The Mizes' assertion that they cannot trespass on their own property is without merit, based on our holding that the petitioners had an easement in the roadway.[24]

The Mizes also argue on appeal that the petitioners' claim for trespass is barred by the statute of limitation.[25] But the Mizes failed to raise this defense in the trial court, and, therefore, it is waived.[26]

6. In their final enumeration, the Mizes contend that the trial court erred in awarding attorney fees because there is no evidence that they acted in bad faith. We disagree.

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.[27]

We will affirm an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support it.[28] "[T]he intentional tort of trespass will support a claim for expenses of litigation and attorney fees under OCGA § 13-6-11. The legal theory is that the intentional

---

[22] See id. at 820 (2).

[23] Id.

[24] See Divisions 1 and 2.

[25] See OCGA § 9-3-30 (a) ("All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues.").

[26] See *Kent v. A. O. White, Jr., Consulting Engineer, Inc.*, 279 Ga. App. 563, 565 (3) (631 SE2d 782) (2006) (statute of limitation defense not raised or ruled upon by the superior court is waived on appeal); *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 697 (4) (527 SE2d 293) (1999) ("Statute of limitation is an affirmative defense which must be properly raised or it is waived."); *Henson v. Columbus Bank & Trust Co.*, 144 Ga. App. 80, 85 (4) (240 SE2d 284) (1977) ("Where enumerated errors on appeal attempt to raise for the first time questions not raised in the trial court, they present nothing for decision.").

[27] OCGA § 13-6-11.

[28] See *Paine v. Nations*, 283 Ga. App. 167, 171 (2) (d) (641 SE2d 180) (2007).

nature of the trespass gives rise to the bad faith necessary for such recovery."[29]

Here, there was evidence to support the trial court's conclusion that the Mizes' "blocking of the driveways by the planting of trees, preventing the [petitioners] from obtaining access across the east-west [roadway on Lot 5] constitutes a willful trespass." "This is some evidence to support a finding of bad faith necessary to recover attorney fees."[30]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED SEPTEMBER 26, 2008.

*Hedrick & Edenfield, Lloyd B. Hedrick, Jr., Stacey K. Hydrick,* for appellants.
*Stewart, Melvin & Frost, Frank Armstrong III, Nancy L. Richardson, Stanley M. Lefco,* for appellees.

---

[29] (Punctuation omitted.) Id.

[30] Id. See also *KDS Properties, Inc. v. Sims,* 234 Ga. App. 395, 398-399 (3) (506 SE2d 903) (1998) (attorney fee award under OCGA § 13-6-11 in a boundary dispute case authorized where defendants trespassed on plaintiff's property, including removing trees, after the plaintiff claimed ownership of the property at issue).