**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2072.  BOSTON  CREEK  HOLDINGS,  LLLP  v.  DO-095
AMICALOLA  ELECTRICAL  MEMBERSHIP
CORPORATION.

DOYLE, Presiding Judge.

Boston Creek Holdings filed suit against Amicalola Electrical Membership Corporation ("AEMC") asserting claims arising out of AEMC's activities on property owned by Boston Creek. In this discretionary appeal, Boston Creek appeals the denial of its motion for joinder to convert its suit into a class action, contending that the trial court incorrectly concluded that the claims in the amended complaint were barred by the one-year statute of limitations in OCGA § 46-3-204 and erred by applying the joinder statute (OCGA § 9-11-21) to a class action. For the reasons that follow, we affirm.

AEMC is a non-profit cooperative that is sole provider of electricity to property owners in a 10-county area of northern Georgia. Boston Creek is a partnership that owns a large parcel of mostly undeveloped land in the AEMC service area. The land was historically occupied by a cabin, and in 1979 the prior owner of the land executed a blanket easement in favor of AEMC that he understood to authorize a single electric service distribution line that he requested. AEMC sought the easement pursuant to its bylaws which required each member requesting service to execute a blanket easement over the member's entire property. The original distribution line remained in place inside a 30-foot-wide clear cut without substantial change until 2008.

The underlying dispute arose when, in the spring of 2008, AEMC entered the property to construct an upgraded power line at the location of the original distribution line. The height of the utility poles increased, and certain construction activities such as tree felling and road building allegedly occurred outside of the existing 30-foot clear cut.

Boston Creek disputed AEMC's entry and construction activity, and AEMC explained that it had a blanket easement over the entire property to conduct any of its activities on any part of members' property without compensation. AEMC referred Boston Creek to the member bylaws requiring blanket easements.

In March 2009, Boston Creek sued AEMC, alleging claims for inverse condemnation, trespass, and negligence per se. AEMC filed a timely answer, and Boston Creek twice amended its complaint (i) to add a claim for declaratory judgment that the bylaws and the claimed blanket easements were unenforceable, and (ii) to enjoin future activities outside of any existing, proper easements.

The parties then filed cross motions for summary judgment as to the declaratory judgment and injunctive relief counts, and in May 2010, the trial court granted partial summary judgment to Boston Creek on those counts, concluding that the bylaws and blanket easements were unenforceable to the extent they purported to allow AEMC to establish new easements or relocate existing easements without compensating property owners, even when the easement did not serve the encumbered property. In that order, the trial court also granted partial summary judgment to AEMC, holding that it held prescriptive easements within historically established clear-cuts and that AEMC could continue to operate within the established prescriptive easement on Boston Creek's property.

In August 2011, Boston Creek filed an amended complaint purporting to convert its claims into a class action on behalf of other members of AEMC whose property had been wrongfully entered upon by AEMC to build electric utility

structures. AEMC moved to dismiss the complaint on the ground that Boston Creek had failed to seek leave of court to join additional parties, and Boston Creek filed another amended class-action complaint in December 2011.

In December 2011, the trial court dismissed the two amended class-action complaints because Boston Creek had failed to seek leave to join additional parties under OCGA § 9-11-21. The court also ruled that in any event, the class members claims, brought in 2011 for trespasses allegedly occurring in 2008, would be barred by the one-year statute of limitations in OCGA § 46-3-204.

Thereafter, Boston Creek moved to join the class members under OCGA § 9-11-21, and the trial court denied the motion on the grounds that it failed to meet the class action requirements of OCGA § 9-11-23, and the new parties' claims would not relate back to the original complaint, rendering them time-barred under OCGA § 46-3-204. The trial court granted Boston Creek a certificate of immediate review, and this Court granted Boston Creek's application for interlocutory review.

Boston Creek argues that the trial court erred by applying the one-year statute of limitations to the class action claims it sought to bring. We disagree.

OCGA § 46-3-204 provides as follows:

4

All rights of action accruing against any electric membership corporation growing out of the *acquisition of rights of way or easements or the occupying of lands of others* by such electric membership corporations shall be barred at the end of 12 months from the date of the accrual of such cause of action; and in cases where any such electric membership corporation is in possession of the lands of others without having condemned the property as provided [in earlier Code sections], and such electric membership corporation is using any such land of another for any of the purposes for which an electric membership corporation may be created under this article, and the owners of the land took no legal steps to prevent the occupation of the land by the electric membership corporation, the rights of the owner of the land shall be limited to whatever damages may have been caused to his realty by such occupation; and this limitation shall apply to all persons whether sui juris or not.[1]

Here, Boston Creek focuses on the emphasized language and argues that it does not apply to its class-action claims to the extent that they are based on an unconstitutional business practice of extracting blanket easements through its bylaws and to the extent that the class action claims seek reformation of AEMC members' deeds. But this too narrowly construes the Code language by ignoring the full sentence: "All rights of action accruing against any electric membership corporation

---

[1] (Emphasis supplied.)

5

growing out of the acquisition of rights of way or easements or the occupying of lands of others by such electric membership corporations shall be barred at the end of 12 months from the date of the accrual of such cause of action . . . ."[2] The Code plainly states that "[a]ll rights of action" shall be barred if they are untimely and grow out of acquisition of easements or the occupying of land. The class is defined to include, inter alia, owners of land onto which AEMC has unlawfully entered to erect structures; thus, Boston Creek and other potential class members cannot avoid the Code's limiting language by seeking equitable relief in the form of deed reformation, because the Code section applies to "all rights of action." Also, simply characterizing the wrongful act as a "business practice" does not change the fact that the basis of all claims is an allegedly unlawful means of acquiring an easement or otherwise occupying class members' land. Therefore, the trial court correctly concluded that the Code section would apply to the class member claims.

Moreover, the trial court correctly ruled that the class claims in the amended complaint would not relate back to the timely claims asserted by Boston Creek in its original complaint. OCGA § 9-11-15 (c) provides, in relevant part, that "[w]henever the claim or defense asserted in the amended pleading arises out of the conduct,

_____

[2] OCGA § 46-3-204.

6

transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Here, however, the original complaint asserted claims against AEMC based on AEMC's entry onto Boston Creek's land outside of areas it was entitled to operate. The complaint alleged that AEMC was entitled to operate in certain areas on Boston Creek property pursuant to the ripening of a prescriptive easement that accounted for its historical operations on Boston Creek's property. According to the complaint, this allegedly accounted for an initial oral license granted by Boston Creek's predecessor, which ultimately became an easement through the operation of time and AEMC's improvements and unchanging operations on the property.[3] Any potentially wrongful entries were alleged to be outside of these historically occupied areas. Thus, the facts and circumstances of the allegedly wrongful entries are highly particular to Boston

---

[3] See, e.g., *Brantley v. Perry*, 120 Ga. 760, 761-762 (48 SE2d 332) (1904) ("The owner of a tenement, in licensing an adjoining land proprietor to enter upon his land to construct a ditch for draining the adjacent land of the licensee, consents to burdening his land with this servitude. If, on the faith of this consent, the ditch is dug and other permanent improvements are made, the license ripens into an easement. The owner of the servient estate has no right to revoke his license after the licensee has executed it and in so doing has incurred expense."); *Mize v. McGarity*, 293 Ga. App. 714, 717 (1) (667 SE2d 695) (2008) ("Pursuant to OCGA § 44-9-4, a parol license to use another's land is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land.") (punctuation omitted).

7

Creek, its property, and the previous negotiations between AEMC and landowners of the Boston Creek property. Another plaintiff's claims would by necessity be based on wholly different facts: *other* entries onto *separate* property subject to the unique historical operations *particular to that property*. This holds true for each potential class member. Therefore, the trial court did not err by concluding that the class member claims in the amended complaint would arise out of different conduct, transactions, or occurrences from those alleged in the original complaint.[4]

Because the trial court correctly ruled that the class members' claims would be barred by the statute of limitations, there was no harm in any procedural violation resulting from the trial court's application of the joinder rules to the amended class action complaints. Therefore, we need not address the question of whether amending a complaint to change the original plaintiff's capacity to that of a class representative implicates the joinder process in OCGA § 9-11-21.

---

[4] See *Jensen v. Engler*, 317 Ga. App. 879, 883 (1) (b) (733 SE2d 52) (2012) (no relation back if new claims arise "out of wholly different facts") (punctuation and emphasis omitted). Boston Creek's argument that the statute of limitations was tolled by coercion or fraud is similarly unavailing. See *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 444-445 (5) (b) (711 SE2d 709) (2011) (no tolling because utility defendant's trespass was complete and not concealed). Here, it is undisputed that the alleged wrongful activity was openly performed outside the scope of any easement contemplated by the plaintiff.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*