**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A2151.   THE   PLANTATION   AT   BAY   CREEK   DO-079
  HOMEOWNERS ASSOCIATION, INC. v. GLASIER et al.

DOYLE, Presiding Judge.

The Plantation at Bay Creek Homeowners Association, Inc. ("the HOA"), sued Allan and Glendee Glasier, who owned a home in the community, seeking equitable reformation of the revised plat of the Glasiers' property and injunctive relief preventing the Glasiers from interfering with the rights of the HOA and its members to use a purported pedestrian easement providing access from a cul-de-sac to a lake located behind the Glasiers' property. The Glasiers filed an answer and counterclaim including eight counts: quiet title (Count 1); a declaratory judgment as to the revised plat (Count 2); breach of quiet enjoyment (Count 3); an injunction prohibiting any person from crossing their property without permission (Count 4); trespass (Count 5);

theft by taking (Count 6); intentional infliction of emotional distress (Count 7); and attorney fees and expenses pursuant to OCGA § 13-6-11 (Count 8). After the parties filed cross-motions for partial summary judgment, a court-appointed special master issued a report concluding that there was no easement across the Glasiers' property. The trial court adopted the special master's report; denied the HOA's summary judgment motion as to its claims; granted summary judgment to the Glasiers as to their counterclaims for quiet title, declaratory judgment, and injunctive relief; and denied the parties' cross-motions for summary judgment as to the Glasiers' remaining counterclaims. The HOA appeals. For the reasons that follow, we affirm the denial of the HOA's summary judgment motion as to its claims, affirm the ruling regarding the Glasiers' counterclaims 1-6 and 8, and reverse the denial of summary judgment to the HOA on the Glasiers' counterclaim for intentional infliction of emotional distress.

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to a judgment as a matter of law. When a plaintiff moves for summary judgment, he has the burden of establishing the absence or non-existence of any defense raised by the defendant. When a defendant moves for summary judgment, he has the burden of either presenting evidence negating an essential element of the plaintiff's

2

claims or establishing from the record an absence of evidence to support such claims. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate.[1]

So viewed, the record shows that the Bay Creek subdivision, which is located in Gwinnett County, is comprised of three different neighborhoods. The subdivision plat, which was recorded on April 29, 2000, shows a 21.59-acre recreation area, which includes a retention pond (referred to as a lake), a pool, a playground, and pickle ball and tennis courts. The lake is bordered entirely on one side with lots; the only road to the recreation area is outside of the subdivision.

On October 9, 2003, Karen Kilbourne purchased Lot 47 from the developers. Lot 47 abuts a cul-de-sac on the northwest corner and the lake on the south boundary line.

---

[1] (Citations and punctuation omitted.) *905 Bernina Avenue Cooperative, Inc. v. Smith/Burns LLC*, 342 Ga. App. 358, 361 (1) (802 SE2d 373) (2017). See also OCGA § 9-11-56 (c).

Revisions 1, 2, and 3 of the plat[2] for the subdivision, which were filed in 2000, 2001, and 2004, depict Lot 47 as follows:



During her ownership of Lot 47, Kilborne disputed the existence of a pedestrian easement on her property and repeatedly denied access to those who

---

[2] According to the Glasiers' brief, the original plat was not filed with the county, and revisions 1, 2, and 3 "are all substantially similar[,] and any differences therein are not relevant to this case."

attempted to access the lake via her property without permission, including calling the police multiple times. In or around 2007, after complaints from Kilborne, the HOA advised its members that there was no access to the lake through Lot 47, and it had a sign erected on the lot line between Lots 46 and 47 that said "NO LAKE ACCESS/NO PARKING."[3]

On November 27, 2012, the Glasiers purchased the home and property on Lot 47 from Kilborne. The warranty deed provides that the conveyance is "subject to all . . . easements and restrictions of record affecting said bargained premises," but it does not specifically mention a pedestrian easement. At the time of the purchase, the "NO LAKE ACCESS" sign was still in the yard. In April 2014, the HOA president, Charles Lorentz, entered the Glasiers' yard without their permission and took the sign. Soon thereafter, people crossed over the Glasiers' property to access the lake on approximately 100 occasions.[4] When Mrs. Glasier spoke with the people traversing her property, some of them stated that the HOA told them could access the lake through the Glasiers' property. The Glasiers protested the removal of the sign to an

---

[3] The sign matched all of the other signs in the subdivision in terms of color and design.

[4] According to the Glasiers, people have walked, biked, and driven golf carts and four-wheelers across their property, without their permission, to access the lake.

HOA board member, at which time they learned that the HOA planned to install a concrete pad for access from the cul-de-sac to the lake. The Glasiers also installed personal "No Trespassing" signs on their property, but the HOA required the Glasiers to remove them.

Mrs. Glasier contacted Sam Evans, the original surveyor, about the easement issue. After looking at his records, Evans advised her that "he didn't see anything that would show an easement" and that the label "10' PEDESTRIAN ESMT" on the plat for Lot 47 was an error and was not supposed to be there. Mrs. Glasier then presented the information from Evans to the Gwinnett County Department of Planning ("the County"), which approved a revised plat prepared by Evans after investigating the matter.[5] The revised plat, which removed the label "10' PEDESTRIAN ESMT" from Lot 47, was recorded.

On March 23, 2015, the HOA sued the Glasiers seeking injunctive relief and equitable reformation of the revised plat to reinstate the original plat. The Glasiers asserted their counterclaims against the HOA, and after the parties filed cross-motions

_____

[5] A County manager contacted Stephen K. Hill, the developer for the subdivision, who advised in an email that "As I recall[,] the only way to access the lake was thru [sic] the rec area unless you owned a lot that backed up to the lake. There may have been a comment on the final plat about access[,] but I don't believe that access was provided."

6

for partial summary judgment, the special master issued a report concluding that there was no easement across the Glasiers' property. The trial court then adopted the special master's report, denied the HOA's summary judgment motion as to its claims, granted summary judgment to the Glasiers as to their counterclaims for quiet title, declaratory judgment, and injunctive relief, and denied the parties' cross-motions for summary judgment as to the Glasiers' remaining counterclaims. This appeal followed.

1. *Declaratory judgment and injunctive relief.* The HOA contends that the trial court erred by adopting the special master's findings of fact and conclusions of law and by granting summary judgment to the Glasiers as to their counterclaims for declaratory judgment and injunctive relief. We disagree.

> Concurrent findings by a trial court and special master are entitled to great deference on appeal. Findings of fact will not be reversed unless they are clearly erroneous, and as long as there is any evidence in the record to support a particular finding, it will not be disturbed. By contrast, conclusions of law by a trial court and special master are subject to de novo review on appeal.[6]

---

[6] (Footnote omitted.) *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724 (2) (653 SE2d 462) (2007).

Here, the special master concluded that the term "10' PEDESTRIAN ESMT" on the plat for Lot 47 "is void for uncertainty of description." This conclusion is supported by the evidence.

> Although the law does not require legal perfection in the description of an easement, the description must be sufficiently full and definite to afford means of identification. While it is not necessary that the instrument should embody a minute or perfectly accurate description of the land, yet *it must furnish the key to the identification of the land intended to be conveyed* by the grantor. If the premises are so referred to as to indicate the grantor's intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable.[7]

"The question of whether or not a description is sufficient to convey property [] is one of law for the courts to decide."[8]

---

[7] (Citations and punctuation omitted; emphasis in original.) *Smith v. Tolar*, 281 Ga. App. 406, 408 (636 SE2d 112) (2006), quoting *Hedden v. Hilton*, 236 Ga. 641, 642 (225 SE2d 39) (1976).

[8] *Murdock v. Ward*, 267 Ga. 303, 304 (477 SE2d 835) (1996). See *Daniel Mills, LLC v. Lyons*, 283 Ga. App. 604, 606 (1) (642 SE2d 226) (2007) ("the key [to the identification of the land] must be in the document itself and lead to the establishment

The phrase "10' PEDESTRIAN ESMT" appears horizontally across Lot 47. There are no lines, arrows, or other markings connecting the phrase to the plat, and it is unclear if "10'" applies to the length or width of any purported easement or if the easement is uniform in either of those dimensions. Thus, the plat

> provides no means to identify the quantity or location of the easement intended to be conveyed. The description does not clearly identify the dimensions of the easement or where it begins, leads, or ends. [And t]here is nothing in the record to support the [HOA's] contention that the [plat] shows the location of the intended easement.[9]

Moreover, as the special master concluded, the plat provides no key for determining the location of the easement "such that extrinsic evidence may be added to determine its precise location."[10]

---

and location of boundaries as of the time of the execution of the contract").

[9] *Smith*, 281 Ga. App. at 408.

[10] *Houston v. Flory*, 329 Ga. App. 882, 888 (1) (766 SE2d 227) (2014). The HOA contends that the pedestrian easement "would be located within the 20-foot sanitary sewer easement and then jog off from the sewer easement to the dam." The inclusion, however, on the subdivision plat of the phrase "ACCESS EASEMENT TO LAKE IS TO BE THROUGH RECREATION AREA" conflicts with this contention.

Accordingly, the trial court did not err by granting summary judgment to the Glasiers on their counterclaims for a declaratory judgment and injunctive relief.[11]

2. *Quiet title*. Based on our holding in Division 1, the trial court did not err by granting summary judgment to the Glasiers on their counterclaim for quiet title and by denying the HOA's summary judgment motion as to that claim.

3. *The HOA's claims*. For the same reason, the trial court did not err by denying the HOA's summary judgment motion as to its claims for equitable reformation of the plat and injunctive relief.

4. *Trespass*. The HOA argues that the trial court erred by denying its motion for summary judgment as to the Glasiers' counterclaim for trespass. We disagree.

The Glasiers allege in their counterclaim that Lorentz, "on behalf of the [HOA]," willfully entered the Glasiers' property without authorization and removed the "NO LAKE ACCESS" sign, and that as a result, they have suffered damages based on "the ever-increasing foot, bike, motorcycle, and golf cart traffic entering their property at all hours of the day."

---

[11] See *Peck v. Lanier Golf Club, Inc.*, 315 Ga. App. 176, 177-181 (a) (726 SE2d 442) (2012) (affirming the grant of summary judgment to a golf club on an adjacent property owner's claims for a declaratory judgment and an injunction because the evidence failed to support the owner's claims for an implied easement); *Smith*, 281 Ga. App. at 408.

10

"An owner of real property has the right to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from its use. In an action for trespass, the landowner may recover compensatory damages upon a showing of any wrongful, continuing interference with a right to the exclusive use and benefit of a property right."[12] In Georgia,"'[t]respass' means any misfeasance, transgression, or offense which damages another's health, reputation, or property."[13] Pursuant to OCGA § 51-10-3, "[a]ny unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered."

It is undisputed that in April 2014, Lorentz entered the Glasiers' property without invitation or authorization and took the "NO LAKE ACCESS/NO PARKING" sign. Lorentz testified as follows at his deposition:

Q: So what was your basis for removing the sign?

A: We had a discussion with the board about the sign, about the pedestrian easement, and that was the result.

Q: So it is your testimony today that you removed it as — as

---

[12] (Citation and punctuation omitted.) *LN West Paces Ferry Assoc., LLC v. McDonald*, 306 Ga. App. 641, 643 (1) (a) (703 SE2d 85) (2010).

[13] OCGA § 1-3-3 (20).

11

president of the board, homeowners association?

A:     That is correct.

There is no evidence that the HOA took any steps to repudiate or disclaim the removal of the sign, nor that it instructed its members thereafter not to enter the Glasiers' property to access the lake.[14]

"'One who aids, abets, . . . incites, . . . encourages[,] or directs, by conduct or words, in the perpetration of a trespass, is liable equally with actual trespassers.'"[15] Here, Lorentz's deposition testimony is sufficient to create a jury question as to whether the HOA is liable for his trespass and whether removal of the sign resulted

---

[14] There was evidence that at least one other board member was aware of Lorentz's removal of the sign and of the Glasiers' subsequent complaints about people accessing the lake via their property.

[15] *Chattahoochee Brick Co. v. Goings*, 135 Ga. 529, 535 (69 SE 865) (1910). See also *King v. Citizens Bank of DeKalb*, 88 Ga. App. 40, 46 (76 SE2d 86) (1953) (physical precedent only) ("It is true that one who aids, abets, or incites, or encourages or directs by conduct or words, in the perpetration of a trespass is liable equally with actual trespassers. One who procures or assists in the commission of a trespass, or does any act which ordinarily and naturally induces its commission, is liable therefor as the actual perpetrator.") (citation and punctuation omitted); *Evans v. Cannon*, 34 Ga. App. 467, 472 (130 SE 76) (1925).

in trespass by other people to access the lake and recreation area.[16] Accordingly, the trial court did not err by denying summary judgment to the HOA on this counterclaim.

5. *Theft by taking.* The HOA enumerates as error the denial of its summary judgment motion as to the Glasiers' counterclaim for theft by taking. This enumeration is without merit.

In support of their "theft by taking" claim, the Glasiers contend that Lorentz, as the agent for and on behalf of the HOA, wrongfully removed the "NO LAKE ACCESS" sign that stood on their property, which sign was on their property when they purchased their home and which they contend belonged to them.

OCGA § 51-10-6 provides that "[a]ny owner of personal property shall be authorized to bring a civil action to recover damages from any person . . . who

---

[16] See *Walls v. Moreland Altobelli Assoc.*, 290 Ga. App. 199, 201 (1) (659 SE2d 418) (2008). See also *Montgomery v. Barrow*, 286 Ga. 896, 898 (1) (692 SE2d 351) (2010) ("If, and only if, no disputed issue of material fact remains is the trial court authorized to grant summary judgment. . . . [If] there are bits of evidence in the record which create genuine issues of material fact[, then] summary judgment is not appropriate. . . . It is not the role of [the appellate court], but is the role of a jury to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible.") (punctuation omitted).

commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property."[17]

As we concluded in Division 4, there was sufficient evidence to create a jury question as to whether the HOA authorized Lorentz's removal of the sign. And there was evidence that Kilborne requested that the HOA install the sign, and it was on the Glasiers' property when they purchased it in November 2012. This is sufficient to create a jury question as to the Glasiers' counterclaim for theft by taking.

6. *Breach of quiet enjoyment*. The HOA also argues that the trial court erred by denying its motion for summary judgment as to the Glasiers' counterclaim for breach of their right of quiet enjoyment. We disagree.

The Glasiers allege in their counterclaim that they have a right to quiet enjoyment of their property pursuant to OCGA § 51-9-1 and that as a result of the HOA's actions, people have been wrongfully using the non-existing pedestrian easement to access the lake.

---

[17] We note that OCGA § 16-8-1 does not define "theft," although paragraph (1) defines "deprive." OCGA § 16-8-2 provides: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

14

OCGA § 51-9-1 provides: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."

The evidence that numerous people accessed the lake by crossing over the Glasiers' property after the HOA told members they could do so and that Lorentz entered their property to remove the sign is sufficient to create a question of fact on this claim. Thus, the trial court did not err by denying summary judgment to the HOA on the Glasiers' counterclaim for breach of quiet enjoyment.

7. *Intentional infliction of emotional distress*. Next, the HOA argues that the trial court erred by denying its summary judgment motion as to the Glasiers' counterclaim for intentional infliction of emotional distress. We agree.

The Glasiers allege in their counterclaim that the HOA's conduct in claiming that its members had a right to use the non-existent easement and encouraging its members to do so "has led to verbal harassment, trespass, dumping of trash, theft, and an interruption of [the Glasiers's] peace and enjoyment of their property, to an extreme and outrageous level."

"Four elements must be present to support a claim of intentional infliction of emotional distress: (1) The conduct must be intentional or reckless; (2) the conduct

15

must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."[18]

> Extreme and outrageous mean exactly that: It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*[19]

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law."[20]

---

[18] (Citations and punctuation omitted.) *Sevcech v. Ingles Markets, Inc.*, 222 Ga. App. 221, 223 (3) (474 SE2d 4) (1996).

[19] (Punctuation omitted; emphasis supplied.) *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 157 (2) (561 SE2d 483) (2002), quoting *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

[20] (Punctuation omitted.) *Kirkland v. Tamplin*, 285 Ga. App. 241, 245 (2) (645 SE2d 653) (2007).

Here, even assuming that the HOA encouraged its members to trespass on the Glasiers' property to access the lake and that some people did so in the middle of the night, others harassed the Glasiers, and a neighbor and the HOA president sat outside the Glasiers' home, where the neighbor remained for hours, the HOA's actions simply "do[] not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress."[21]

Further, the Glasiers have failed to produce evidence that they suffered severe emotional distress.

> Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it. Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide.[22]

---

[21] *Justice v. SCI Ga. Funeral Svcs.*, 329 Ga. App. 635, 639 (4) (765 SE2d 778) (2014), quoting *Ruotanen*, 246 Ga. App. at 436.

[22] (Punctuation omitted.) *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 858 (1) (678 SE2d 555) (2009), quoting *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (2) (404 SE2d 442) (1991).

17

Mrs. Glasier testified that she suffered headaches for approximately a week, mentioning them to her doctor during her annual physical, she fears for her safety and that of her children, and she is afraid to let her children play in their backyard. This, while certainly unpleasant, does not constitute emotional distress "so severe that no reasonable person could be expected to endure it."[23] Thus, the trial court erred by denying the HOA's summary judgment motion on the Glasiers' claim for intentional infliction of emotional distress.

8. *Attorney fees and expenses*. The HOA further contends that the trial court erred by denying its summary judgment motion as to the Glasiers' motion for attorney and expenses pursuant to OCGA § 13-6-11. We disagree.

OCGA § 13-6-11 "provides for an award of attorney fees against a defendant who has 1) acted in bad faith, 2) been stubbornly litigious, or 3) caused plaintiff

---

[23] *Abdul-Malik*, 297 Ga. App. at 858 (1) ("While unpleasant, the sleeplessness and weight gain are not so severe that no reasonable person could be expected to endure them."). See also *Jones v. Warner*, 301 Ga. App. 39, 43 (3) (686 SE2d 835) (2009) (affirming trial court's grant of summary judgment on intentional infliction of emotional distress claim because "based on [the plaintiff's testimony that she suffered 'anxiety, nervousness, sleeplessness, and irritability' for one month after the arrest, as well as her failure to seek medical or psychiatric treatment for these symptoms, [the plaintiff] could not show that her symptoms were sufficiently severe); *Witter v. Delta Airlines*, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997), aff'd, 138 F3d 1366 (11th Cir. 1998) (anxiety, sleeplessness, overeating, diarrhea, and headaches did not constitute "severe" emotional distress).

unnecessary trouble and expense."[24] Whether a party is entitled to attorney fees under 13-6-11 is an issue for determination by the jury.[25]

Here, there was evidence, when construed in favor of the Glasiers, showing that the HOA advised its members in or around 2007 that there was no access to the lake through Lot 47; that the HOA erected a "NO LAKE ACCESS" sign on Lot 47 at Kilborne's request; that the HOA subsequently told members that they could in fact access the lake through Lot 47; that the HOA required the Glasiers to remove their own "No Trespassing" signs; that the original surveyor conceded that the plat did not reflect an easement; that the developer told a County manager that access to the lake via Lot 47 was not provided; and that the County approved a revised plat with the "10' PEDESTRIAN ESMT" label redacted. This evidence creates a question of fact as to whether the Glasiers were entitled to fees under OCGA § 13-6-11.[26]

---

[24] *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80 (390 SE2d 31) (1990).

[25] See id. at 81.

[26] See id.; *Camp Cherokee, Inc. v. Marina Lake, LLC*, 316 Ga. App. 366, 372-373 (4) (a) (729 SE2d 510) (2012).

19

Furthermore, "[t]he intentional tort of trespass will support a claim for expenses of litigation and attorney fees under OCGA § 13-6-11. The legal theory is that the intentional nature of the trespass gives rise to the bad faith necessary for such recovery."[27] Thus, because summary judgment was properly denied to the HOA on the Glasiers' counterclaim for trespass, the trial court also properly denied the HOA's summary judgment as to the Glasiers' OCGA § 13-6-11 counterclaim OCGA § 13-6-11.[28]

9. *Punitive damages*. Finally, the HOA contends that the trial court erred by denying its summary judgment motion as to the Glasiers' counterclaim for punitive damages. Again, we disagree.

"Punitive damages may be awarded in accordance with OCGA § 51-12-5.1 (b) when there is 'clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'"[29]

---

[27] (Punctuation omitted.) *Mize v. McGarity*, 293 Ga. App. 714, 720-721 (6) (667 SE2d 695) (2008), quoting *Paine v. Nations*, 283 Ga. App. 167, 171 (2) (d) (641 SE2d 180) (2006).

[28] See *Mize*, 293 Ga. App. at 720-721 (6).

[29] *Camp Cherokee*, 316 Ga. App. at 373 (4) (b).

As set forth in Division 4,

the evidence presented a material question as to whether the trespass . . . of [the HOA on the Glasiers'] property was knowing, wilful, and [demonstrated] a conscious indifference to the property rights of [the Glasiers]. It thus follows that the issue regarding [the Glasiers'] claim for punitive damages was required to be submitted to the jury.[30]

*Judgment affirmed in part, reversed in part. Dillard, C. J., and Mercier, J., concur.*

---

[30] Id. at 373-374 (4) (b).